# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD WIATREK, Individually, and on Behalf of all Others Similarly Situated, | § § § § | |
| *Plaintiff,* | § | Civil Action No. SA-17-CA-772-XR |
| v. | § § § | |
| FLOWERS FOODS, INC. and FLOWERS BAKING CO. OF SAN ANTONIO, | § § § § § | |
| *Defendants.* | § | |

## ORDER

On this date, the Court considered the status of the above-captioned case, including Defendants' Motion to Dismiss (Docket no. 32), Plaintiffs' Motion to Amend Complaint (Docket no. 33), Plaintiffs' Motion to Certify a Rule 23 Class (Docket no. 34), and Plaintiffs' Motion for Sanctions (Docket no. 41). After careful consideration, the Court GRANTS Defendants' motion to compel Plaintiffs who have signed the Arbitration Agreement into arbitration and DENIES Plaintiff's request to sanction Defendants. Further, having reviewed the Scheduling Order and Plaintiff's Motion for Leave to Amend, the motion to amend is GRANTED IN PART and DENIED IN PART, and the related motion to certify a Rule 23 class is DENIED.

## BACKGROUND

Plaintiff Wiatrek filed this case on August 15, 2017 individually and on behalf of all others similarly situated. Docket no. 1. Plaintiff asserts that Defendants, Flowers Foods, Inc. and Flowers Baking Co. of San Antonio ("FBC") misclassified him and other distributors with FBC of San Antonio as independent contractor distributors rather than employees and that as a result,

1

Plaintiffs were not paid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 2021, et seq. Docket no. 1 ¶¶50-57. This claim was brought as a collective action under the FLSA, pursuant to 29 U.S.C. § 26(b). This Court conditionally certified a class of distributors in San Antonio on February 5, 2018, and thirty-two additional distributors have opted in. The opt-in period has closed.

Defendants now move to compel arbitration as to twenty-two of the opt-in Plaintiffs. In December 2015, Plaintiffs Steve Aguilar, Pourang Babsharif, John Coburn, Ralph Faykus, Vidal Ferrazas, Jr., Rashaan Frankin, Jeffrey Hamilton, Armando Lopez, Bobby Lopez, Christopher Felix Mejia, Marco Palomo, Andres Razo, Rigoberto Razo, Leonel Rivera, Daniel Sanchez, Humberto Sanchez, Mickey J. Schulm, Benjamin Smith Short III, Juan Vasquez, Tony L. Way, and Carman P. Wadlington entered into amendments to the distributorship agreements with Defendants. Docket no. 32 at 1-2.[1] The Amendment requires individuals to settle claims, disputes, and controversies relating to the distributorship agreement through individual arbitration, effectively waiving any right Plaintiffs might have in a collective or class action. *Id*. 3-4. The Plaintiffs who signed the Amendment had the choice of receiving $1,000.00 or purchasing certain products at an additional discount for a one-year period. *Id.* at 3.

After signing the Amendment, the above-mentioned Plaintiffs entered into the comprehensive arbitration agreements ("Arbitration Agreements"). The Arbitration Agreements also informed Plaintiffs that claims arising out of their Distributor Contract with Defendants would be subject to arbitration and that they were giving up the right to bring their claims against Defendant as a class or collective action in a court of law or arbitration. Docket no. 32 at 4.

On May 14, 2018, Defendants filed their motion to dismiss currently before the Court,

---

[1] Defendants contend that Plaintiff Escar Rivera purchased his distributorship directly from Plaintiff Christopher Felix Mejia, under the terms that applied to Mejia's distributorship. Docket no. 32 at 3 n.3.

asking the Court to compel the twenty-two Plaintiffs who signed Arbitration Agreements to proceed with individual arbitration and to dismiss their claims in this litigation with prejudice, except to enforce any arbitration award. Defendants argue that Plaintiffs entered into a valid arbitration agreement, containing a valid delegation clause, and therefore Plaintiffs' claims relating to the Distributor Agreement should be subject to individual arbitration, pursuant to the Amendment and the Arbitration agreement. Docket no. 32 at 8-13.

On May 23, Plaintiffs filed a Motion for Leave to Amend their Complaint to add certain claims, and a related Motion to Certify a Rule 23 Class for the state-law claims, both of which are opposed. On May 31, Plaintiffs filed a motion requesting sanctions, a temporary restraining order, and a permanent injunction, alleging improper actions by Defendants. Docket no. 41. In the motion, Plaintiffs complain about the manner in which Defendants obtained the Arbitration Agreements and allege that Defendants took deliberate actions to persuade and coerce Plaintiffs from participating in this litigation. Plaintiffs argue that the "in-person solicitation that required Plaintiffs to watch a video presentation regarding all the benefits of working for Flowers," followed by an offer of $1000 or an increased profit margin in exchange for waiver of FLSA collective action rights constitutes improper conduct meant to interfere with and discourage participation in these lawsuits. *Id.* at 4.

## DISCUSSION

### I. Defendants' Motion to Dismiss and Compel Arbitration

*a. Legal Standard*

The Federal Arbitration Act ("FAA") requires a district court to stay judicial proceedings where a written agreement provides for the arbitration of the dispute that is the subject of the litigation. 9 U.S.C. § 3. "The preeminent concern of Congress in passing the Act was to enforce

private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)) (internal citations omitted). As the Supreme Court emphasizes, "[n]ot only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts may recognize only "generally applicable contract defenses such as fraud, duress, or unconscionability," but not defenses that apply only to arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Arbitrability is a threshold question.

In deciding a motion to compel arbitration under the FAA, courts typically conduct a two-part inquiry. First, the court must determine whether the parties agreed to arbitrate, and next the court must determine whether the current dispute falls within the scope of a valid agreement to arbitrate. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 733 (5th Cir. 2018) (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)). If the party seeking arbitration asserts that there is a delegation clause, the court performs the first step of the analysis to determine if an agreement to arbitrate was formed, then determines if it contains a valid delegation clause. *Doordash*, 888 F.3d at 743-44.

If the court concludes that there is a valid agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, the court should consider the delegation clause to be valid and compel arbitration, unless a federal statute or policy renders the claims

nonarbitrable. *JP Morgan Chase & Co. v. Conegie ex re. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). The party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity. *Carter v. Countrywide Credit Indus., Inc.*, 362, F.3d 294, 297 (5th Cir. 2004). The court must resolve uncertainty concerning the arbitrability of claims in favor of arbitration. *Id.*

  *b. Analysis*

  The aforementioned Plaintiffs have entered into two agreements relating to arbitration of claims and disputes arising out of their relationship with Defendants: (1) the Amendment to the Distributor Agreement, signed December 2015 and (2) the December 2015 Arbitration Agreement. The Arbitration Agreement contains a delegation clause. Accordingly, the Court will limit its analysis to determining whether the parties entered into a valid arbitration agreement with a valid delegation clause. Plaintiffs do not deny that they signed the Arbitration Agreements. However, Plaintiffs raise two arguments suggesting the Arbitration Agreements are invalid under contract law: (1) the Arbitration Agreements are illusory and (2) the Arbitration Agreements are unconscionable. Docket no. 38 at 6-7, 12-16. Plaintiffs also argue that the Arbitration Agreements abridge Plaintiffs' FLSA rights by submitting FLSA claims to private settlement and by requiring Plaintiffs to waive their rights to collective action. *Id.* at 12.

  First, the Court must decide whether an agreement to arbitrate was formed. The Court must interpret an arbitration agreement according to principles of state contract law. *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 681 (2010). Plaintiffs raise a challenge to the validity of the Agreement and argue that the Agreement is illusory. Under Texas law, an arbitration agreement is not illusory if it requires "notice of any modification or termination and state[s] that any such amendment would apply prospectively only." *J.M. Davidson, Inc. v.*

5

*Webster*, 128 S.W.3d 223, 230 (Tex. 2003) (citing *in re Halliburton Co.*, 80 S.W.3d 556, 569-70 (Tex. 2002)).

Plaintiffs complain that the Agreement is illusory because it states that "[t]his Arbitration Agreement may be modified or terminated by Company after thirty (30) days written notice to distributor." Docket no. 32, App. at 7. Plaintiffs argue that this provision gives Defendants the power to terminate the contract at-will. Defendants point out that the next sentence in the Arbitration Agreement states that "[a]ny modifications or terminations shall be prospective only and shall not apply to any claims or disputes that are pending in arbitration or that have been initiated by either party pursuant to the AAA rules." The provision requires thirty days written notice and clearly states that any modifications or terminations will be prospective only. Consequently, the Arbitration Agreement is not illusory under Texas law. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 230 (Tex. 2003).

Plaintiffs also argue that the arbitration is procedurally unconscionable "as to certain plaintiffs" and therefore invalid. Docket no. 38 at 12. Plaintiffs allege that the Arbitration Agreements were procured through in-person solicitations that are "inherently unfair." *Id*. at 13. Plaintiffs' allegations constitute a claim for procedural unconscionability. A contract is not negated because one party may have been in a superior bargaining position. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006); *see also Carter v. Countrywide Credit Industr., Inc.*, 362 F.3d 294 (5th Cir. 2013) (employment arbitration clause was not procedurally unconscionable under Texas law where employer used superior bargaining position to present clause to prospective employees). Under Texas law, whether an agreement is procedurally unconscionable rests on whether the contract results in unfair surprise or oppression. *Id.* Allegations of misrepresentations and pressure to sign an arbitration agreement quickly are

6

insufficient to demonstrate procedural unconscionability. *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002). Agreements are found procedurally unconscionable where a party is mentally incapable of understanding the agreement. *See Barker v. Halliburton Co.*, 541 F. Supp. 2d 879, 885 (S.D. Tex. 2008).

Reviewing Plaintiffs' allegations of procedural unconscionability in light of applicable Texas law, none of the allegations are sufficient to invalidate the arbitration agreement for procedural unconscionability. Plaintiffs' Affidavits do not show that any individuals were coerced. Plaintiffs do not allege that they were mentally incapable of understanding the agreement. Although Plaintiffs made general assertions of some Houston-area distributors being unable to read English, they did not provide proof that any of the distributors who signed the Arbitration Agreements at issue here were unable to read English. Rather, Plaintiffs allege that the circumstances surrounding the agreement made them feel pressured into signing the agreement. Docket no. 38 at 15. Such allegations are insufficient to prove procedural unconscionability under Texas law, and the Arbitration Agreements cannot be invalidated on this ground.

Since the Arbitration Agreement is valid under Texas law, the Court must decide whether the Arbitration Agreement contains an enforceable delegation clause. The Arbitration Agreement states:

> Any issues concerning arbitrability of a particular issue or claim under this Arbitration Agreement (except for those concerning the validity or enforceability of the prohibition against class, collective, representative, or multi-plaintiff action arbitration and/or applicability of the FAA) shall be resolved by the arbitrator, not a court.

Docket no. 32 at 5-6. The Arbitration Agreements incorporate the American Arbitration Association rules, which give the arbitrator the power to determine arbitrability. *See* Rule 7,

Commercial Arbitration Rules and Mediation Procedures, American Arbitration Association, p. 13 (2013). Absent any specific challenge to the delegation clause by the party opposing arbitration, the court must treat the delegation clause as valid. Plaintiffs have not specifically challenged the delegation clause. Accordingly, the Court concludes that the Arbitration Agreement and the delegation clause are valid, and Plaintiffs who have signed Arbitration Agreements should be compelled to arbitrate.

Independently, Plaintiffs argue that the Court should not compel individual arbitration of Plaintiffs' claims, because the FLSA's right to collective action cannot be waived by contract, and settlement of FLSA claims requires the supervision of the Department of Labor or court approval. Docket no. 38 at 8-12. The Arbitration Agreement clearly states that both parties waive any rights to initiate or maintain any claim covered by the Agreement on "a class, collective, representative, or multi-party basis either in court or in arbitration." Docket no. 32 at 4. Defendants reply that Plaintiffs are not forgoing any substantive rights and that the collective action procedure can be waived in an arbitration agreement. Docket no. 42 at 5.

The Supreme Court recently upheld class-action waivers in arbitration agreements, even when the arbitration agreements cover FLSA claims. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018). Even prior to the Supreme Court's opinion in *Epic Systems*, the Fifth Circuit rejected the idea that an "inability to proceed collectively deprives [claimants] of substantive rights available under the FLSA." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004). A waiver of collective action does not deprive claimants of substantive rights guaranteed by FLSA; rather it alters the particulars of dispute resolution procedure within the parameters allowed by the FLSA, the FAA, and the Constitution. *Id.* The Court is "specifically

directed [ ] to respect and enforce the parties' chosen arbitration procedures" and will enforce the Arbitration Agreements as written. *Epic Sys. Corp.*, 138 S. Ct. at 1621.

Because the Arbitration Agreement contains a class-action waiver, and because the Arbitration Agreement and the class-action waiver are enforceable, the Court concludes that Plaintiffs who signed the Arbitration Agreements must submit to individual arbitration. The Court will grant Defendants' Motion to Dismiss and compel Plaintiffs who have signed the Arbitration Agreements to arbitrate their disputes individually.

## II. Plaintiffs' Request for Sanctions

Plaintiffs request that the Court issue a temporary restraining order, a temporary and permanent injunction, and a notice to current and putative plaintiffs "to essentially prevent any further irreparable interference by Defendants Flowers Foods, Inc. and Flowers Baking Co. of San Antonio, LLC." Docket no. 41 at 1. Plaintiffs allege that "defendants took deliberate actions to persuade and coerce plaintiffs from participating in this litigation" and that Defendants' actions occurred both before and after the opt-in period. *Id.* at 4.

### a. Legal Standard

Courts have broad authority to govern the conduct of both counsel and parties in FLSA collective actions. *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989)). The Court's authority extends to exercising control over the action and entering "appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).

An applicant for a temporary restraining order must establish that (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the temporary restraining order is not granted; (3) the threatened

injury to the movant outweighs the threatened harm to the defendant; and (4) the granting of the temporary restraining order will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

> b. *Analysis*

Plaintiffs' motion for a temporary restraining order seeks to disable Defendants "from in any way threatening, discriminating, or retaliating against Plaintiffs because they filed an opt-in form in the above-reference case [*sic*]." Docket no. 41 at 26. Plaintiffs argue that both before and after the opt-in period, "Defendants intimidated and attempted to coerce Plaintiffs in an effort to dissuade them from participating in this litigation." *Id.* at 27. Plaintiffs state that Defendants' actions "of buying arbitration agreements are clearly promoting the employees' fear of economic retaliation in violation of the FLSA." *Id.* at 22. Plaintiffs also argue that "Defendants are now attempting to retaliate against certain Plaintiffs by attempting to get them dismissed from the lawsuit." *Id.* In light of the facts and the relevant case law, Plaintiffs cannot establish the elements to obtain a temporary restraining order.

Plaintiffs signed the Arbitration Agreements in December 2015, almost two years before this lawsuit was filed in August 2017, and over two years before this Court granted Plaintiffs' Motion for Conditional Certification in February 2018. The relevant conduct related to obtaining the Plaintiffs' signatures happened before this lawsuit was filed and before the opt-in period began. Courts may regulate communications between Plaintiffs, putative Plaintiffs, and Defendants in FLSA collective actions to prevent misleading, confusing, coercive, or otherwise improper communications, consistent with the First Amendment. *See generally Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667-68 (E.D. Tex. 2003). But Plaintiffs point to no improper communications involving Plaintiffs in this action. Plaintiffs note that other suits were filed in

Houston in 2016 (against Flowers Foods, Inc. and Flowers Baking Co. of Houston) and refer to some communications with Houston opt-in Plaintiffs that occurred more recently. However, if Plaintiffs believe that Defendants were impermissibly interfering with those class claims, that is properly brought before the Houston court rather than this court.

Plaintiffs allege that Defendants required them to attend in person-mandatory video presentations followed by the offer of $1000 or an extra 4% profit margin beginning in December 2015, and "persisted as Defendants used its management team to coerce and repeatedly inquired about Plaintiffs' (and potential Plaintiffs) signatures and the reasons for not signing through about June 2017." Docket no. 38 at 6. But as discussed previously, Plaintiffs' Affidavits in this litigation fail to establish coercion. And all of the agreements at issue in this case were signed in December 2015. Docket no. 38-1 ¶¶ 3-4; 38-2, ¶¶ 3-4; 38-3 ¶¶3-4; 38-4, ¶¶ 3-4; 38-5, ¶¶ 3-4. This lawsuit was not filed until 2017. There is no clear record of abuse by one side with respect to pre-certification communications warranting relief. *Gulf Oil*, 452 U.S. at 101; *see also Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667-68 (E.D. Tex. 2003). Finally, this Court has concluded that the Arbitration Agreements are valid and enforceable. Accordingly, the Court denies Plaintiffs' motion for sanctions or for injunctive relief.

### III. Plaintiffs' Motion for Leave to Amend the Complaint and to Certify Class

Plaintiffs request leave to amend the complaint to include a claim for failure to maintain records in violation of the FLSA, state-law claims for quantum meruit and promissory estoppel, and class action allegations pursuant to Federal Rule of Civil Procedure 23. Docket no. 33-1. Plaintiffs' request is not within the deadline to amend set in the Court's Scheduling Order. Defendants are opposed to Plaintiff's motions.

*a. Legal Standard*

Generally, Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings before trial. Rule 15(a) allows a party to amend a pleading with the opposing party's consent or the court's leave. Rule 15(a) provides that leave should be given "freely . . . when justice so requires." FED. R. CIV. P. 15(a). The decision to grant or deny a motion to amend is within the discretion of the trial court. *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). In exercising its discretion, the Court considers such factors as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiffs' motion was filed after the expiration of the court-ordered deadline to amend pleadings. Motions to amend filed after the court-ordered deadline to amend pleadings are subject to the stricter "good cause" standard of Rule 16. *Sw. Bell. Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003). Rule 16(b) requires that a party show good cause for not meeting the deadline before Rule 15(a) will apply. Four factors are relevant to good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.*

*b. Analysis – Failure to maintain records in violation of the FLSA, quantum meruit, and promissory estoppel*

Plaintiffs request leave to amend the complaint to include a claim for failure to maintain records in violation of the FLSA and state-law claims for quantum meruit and promissory estoppel. Defendants are opposed to Plaintiffs' request and assert that Plaintiffs' motion is futile,

because the state common-law claims are preempted by the FLSA. Even the more lenient standard of Rule 15 precludes amendment where it would be futile. The Court first addresses this threshold inquiry to determine whether addition of claims for quantum meruit and promissory estoppel is permissible in these circumstances.

The issue of whether a federal law preempts state law is a question of law reserved for the Court. *Franks Inv. Co. L.L.C. v. Union Pac. R.R. Co.*, 593 F.3d 404, 407 (5th Cir. 2010 (en banc). The Supreme Court directs the Court to look at the "purpose of Congress" as the "ultimate touchstone" in every preemption case. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Congressional purpose is either expressly stated or implied where the statutory structure indicates a Congressional intent to occupy the field or where there is a federal-state conflict. *Franks Inv. Co.*, 593 F.3d at 407. The FLSA does not explicitly preempt any state-law claims, and so any preemption this Court finds must be implied.

The Fifth Circuit has yet to issue an opinion that squarely addresses the preemption of state-law claims by the FLSA. *See Casey v. Rainbow Group Ltd.*, 109 F.3d 765 (5th Cir. 1997) (declining to find complete preemption under FLSA, but reserving the issue of ordinary preemption). District courts in this circuit, including this Court, have concluded that state-law claims are preempted by the FLSA to the extent the state-law claim is predicated on an alleged violation of the FLSA. *See Estraca v. Rockwater Energy Sols.*, Inc., No. 5:16-CV-310-DAE, 2016 WL 3748612, at *2 (W.D. Tex. July 7, 2016); *Botello v. COI Telecom, L.L.C.*, No. SA-10CV-305-XR, 2010 WL 3784202 (W.D. Tex. Sept. 21, 2010) (unjust enrichment claims based on FLSA violations preempted by the FLSA); *see also Coberly v. Christus Health*, 829 F. Supp. 2d 521, 525 (N.D. Tex. 2011)("State law claims are preempted by the FLSA to the extent the plaintiff seeks damages for unpaid minimum wages or unpaid overtime compensation.").

13

However, state-law claims asserted "wholly aside from or independent of the FLSA" are not preempted. *Botello*, 2010 WL 3784202 (citing *Guerrero v. JPMorgan Chase & Co.*, 2010 WL 457144, at *4). Thus, state-law claims are not preempted if they do not attempt to seek remedies for FLSA violations and are independent of the FLSA claims.

Because this is a misclassification case, if Plaintiffs are independent contractors rather than employees, the FLSA will not apply. The state-law claims Plaintiffs seek to raise in their Amended Complaint do not expressly seek relief based on Defendant's alleged violation of the FLSA. For example, the quantum meruit claim is premised upon Defendants' alleged "promises to Plaintiffs regarding hourly pay they would earn for all hours worked." These claims may be asserted based on Texas common law, as alternative claims to the FLSA claim, and without relying on violations of substantive provisions or rights provided by the FLSA. *See Karna v. BP Corp. N. Am.*, 11 F. Supp. 3d 809, 814 (S.D. Tex. 2014) (finding breach of contract claim not preempted because it was independent of the FLSA, neither predicated upon an FLSA violation nor seeking any remedy provided by the FLSA); *Diallo v. Alo Enters. Corp.*, No. 12-3762, 2013 WL 3772827 (D.N.J. July 17, 2013). Accordingly, the Court finds that the amendment to include claims for promissory estoppel and quantum meruit would not be futile.

The Court now turns to the good-cause factors. First, Plaintiffs provide no explanation for the failure to timely move for leave to amend. This weighs against granting leave to amend. However, as to importance of the amendment, the Court finds that the amendment is important. Federal Rule of Civil Procedure 8(d)(2) states that a "party may set forth two or more statements of a claim or defense alternately or hypothetically." The amendment may allow Plaintiffs an alternative basis for recovery should their FLSA claims fail. With regard to the potential prejudice in allowing amendment to include claims for promissory estoppel, quantum meruit,

and failure to maintain records in violation of the FLSA, the Court finds that the amendment would not cause prejudice to the Defendants. At this time, the proceedings are not sufficiently advanced that granting leave to amend would result in great delay. Nor have Defendants shown prejudice beyond defending against the claims, which is insufficient. Further, a continuance of the Scheduling Order Deadlines could cure any prejudice to the Defendants. The Court grants the remaining Plaintiffs leave to amend to include claims for failure to maintain records in violation of the FLSA, and state law claims for quantum meruit and promissory estoppel.

       *c. Analysis – Class Action Allegations*

The Court finds that amending the complaint to include class allegations pursuant to Federal Rule of Civil Procedure 23 is not sufficiently important to warrant amendment of the complaint or a change to the scheduling order. Any potential members of this class already received notice of the FLSA collective action when this Court granted conditional certification. The opt-in period to join that class is over, and the distributors who wanted to be a part of the litigation have already joined the proceedings. Certifying a Rule 23 opt-out class at this point in the litigation would greatly complicate this case and create prejudicial delay, and appears to have little benefit in these circumstances. Accordingly, the court denies Plaintiffs leave to amend to include class action allegations, and denies the related motion to certify a Rule 23 class.

**IV.    Decertification of FLSA 29 U.S.C. § 26(b) Class**

Of the thirty-three members of the FLSA class, eleven remain who have not signed the Arbitration Agreements with Defendants. Richard Wiatrek, John Albert, Argelio Garcia, Jerman Garcia, Lance Johnson, Christopher Lacey, Jorge Humberto Lopez, Paul Munoz, Juan Pena, Rodolfo Verastegui, and Keven Dentherage remain parties to the litigation against Flowers Foods. The opt-in period has passed and there are no further opt-in Plaintiffs to this litigation. As

discussed by the Court during the recent hearing, because there are only eleven remaining plaintiffs, the FLSA class is decertified, and the claims will remain but will not be tried on a collective basis.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration (Docket no. 32) is GRANTED. Plaintiffs who signed Arbitration Agreements must submit their claims to individual arbitration. Steve Aguilar, Pourang Babsharif, John Coburn, Ralph Faykus, Vidal Ferrazas, Jr., Rashaan Frankin, Jeffrey Hamilton, Armando Lopez, Bobby Lopez, Christopher Felix Mejia, Marco Palomo, Andres Razo, Rigoberto Razo, Escar Rivera, Leonel Rivera, Daniel Sanchez, Humberto Sanchez, Mickey J. Schulm, Benjamin Smith Short III, Juan Vasquez, Tony L. Way, and Carman P. Wadlington are hereby DISMISSED from this lawsuit.

Plaintiffs' Motion for Sanctions (Docket no. 41) is DENIED. Plaintiffs' Motion for Leave to Amend the Complaint (docket no. 33) is GRANTED IN PART and DENIED IN PART. Plaintiffs' Motion to Certify a Rule 23 Class (docket no. 34) is DENIED. The FLSA class is decertified, and the eleven remaining Plaintiffs are granted leave to amend the complaint to include a claim for failure to maintain records in violation of the FLSA and alternative state-law claims for quantum meruit and promissory estoppel. Plaintiffs are not granted leave to amend the complaint to include class action allegations pursuant to Federal Rule of Civil Procedure 23.

SIGNED this 16th day of June, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE