IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD WIATREK Individually and on Behalf of all Others Similarly Situated, | § § § | |
| Plaintiff, | § § | Civil Action No. 5:17-cv-00772 |
| v. | § § | |
| FLOWERS FOODS, INC. and FLOWERS BAKING CO. OF SAN ANTONIO, LLC, | § § § § § | |
| Defendants. | § § | |

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT

Following extensive negotiations between the parties and their counsel, Plaintiffs, individually and on behalf of the remaining opt-in Plaintiffs who joined this lawsuit[1], and Defendants Flowers Foods, Inc. ("Flowers Foods") and Flowers Baking Co. of San Antonio, LLC ("FBC of San Antonio") (collectively "the Parties") reached a proposed settlement in the above-captioned case. The Parties respectfully request that the Court approve their proposed settlement of Plaintiffs' Fair Labor Standards Act ("FLSA") claims seeking alleged overtime compensation and dismiss this case with prejudice. As detailed below, the Court should grant the Parties' Motion because this settlement is a fair, adequate, and reasonable resolution of the Parties' *bona fide* dispute as to liability and alleged damages under the FLSA. Additionally, Plaintiffs also seek an award of attorneys' fees and costs. Defendants do not oppose these requests.

---

[1] Following the Court's Order of June 16, 2018, there are eleven (11) Plaintiffs remaining in this case: John Michael Albert, Kevin Dentherage, Argelio Garcia, Jerman Garcia, Lance Kelly Johnson, Christopher Lacey, Jorge Humberto Lopez, Paul Ishmael Munos, Juan Valenti Pena, Rolando Verastegui, Richard Wiatrek. *See* Dkt. No. 56 at p. 16. The Court decertified the case and now it remains a multi-plaintiff action only.

## BACKGROUND

**I.     Relevant procedural and factual history**

On August 15, 2016, the named Plaintiffs, individually and on behalf of all other "similarly-situated" individuals, filed an FLSA collective action lawsuit against two Defendants: Flowers Foods and FBC of San Antonio. Flowers Foods is the parent company of numerous operating subsidiaries throughout the country, each of which is organized as a separate legal entity and responsible for its own day-to-day operations. FBC of San Antonio is one such subsidiary.

Plaintiffs assert that they and other "similarly-situated" distributors have been misclassified as independent contractors. (Compl., Dkt. No. 1 ¶¶ 4, 46, 49.) They seek overtime on behalf of themselves and these other distributors. (*See id.* ¶¶ 50-57.) Currently, there are eleven (11) Plaintiffs total, including the Named Plaintiffs and Opt-In Plaintiffs.

Defendants strongly dispute these allegations and assert that Plaintiffs' claims fail for at least three separate, independently-sufficient reasons. First, Defendants contend that Plaintiffs have been properly classified as independent contractors. Second, Defendants contend even if Plaintiffs were employees, which is denied, they are otherwise exempt from the FLSA overtime provisions under the Motor Carrier Act ("MCA") exemption. 29 U.S.C. §213(b)(1). Third, Defendants contend even if Plaintiffs were employees, which is denied, they are also exempt under the FLSA's "outside sales" exemption. 29 U.S.C. §213(b)(1). In short, Defendants strongly contested these claims, and Plaintiffs faced a number of hurdles in this lawsuit.

On November 22, 2017, Plaintiffs moved for conditional certification and sought notice (Dkt. No. 12). Plaintiffs filed a Corrected Motion for Conditional Certification on November 27, 2017 (Dkt. No. 13). On November 30, 2017, in their opposition to this Motion, Defendants

2

contended that conditional certification was not appropriate (Dkt. No. 15). The Court granted Plaintiffs' Corrected Motion for Conditional Certification on February 5, 2018 (Dkt. No. 18). However, by Order entered on June 16, 2018, the Court "decertified the [FLSA] class" that it had previously conditionally certified. *See* Dkt No.56 at p. 16. The Court also allowed Plaintiffs to amend their Complaint to assert various state law claims on an individual basis.

During the almost-one-year that this case has been pending, the parties have litigated extensively, including engaging in voluminous written discovery, filing of multiple motions and briefs, and attending hearings before the Court.

## II.   Terms of the proposed settlement

### A.   Settlement amount and allocation

The agreed-to settlement amount is $201,500.00, inclusive of attorneys' fees. From this amount, counsel for Plaintiffs seek an award of $152,000.00 as attorneys' fees and costs. If approved, this would allow the 11 Plaintiffs to receive a collective award of $49,500.00. If approved, the 11 Plaintiffs will receive an award based on the length of time they owned and operated a distributorship, among other factors, averaging $4,500 each.

### B.   Release of claims

In exchange, the Named Plaintiffs and the Opt-In Plaintiffs have agreed to dismiss this case, with prejudice. They have also agreed to waive and release the Defendants from all claims under the FLSA and state law that were or could have been asserted in this matter up to the period the Settlement Agreement is executed. Additionally, Named Plaintiffs, on behalf of themselves only, have agreed to release Defendants from any type of employment claim or other claim pertaining to or related to their distributorships, including but not limited to any retaliation claims they advanced on behalf of themselves.

### C. Other Non-Monetary Terms

The Settlement also contains various other terms designed to strengthen the Independent Contractor model moving forward, such as the implementation of a Distributor Advocate and Distributor Review Panel, as more fully outlined in Exhibits 1 and 2 to the Settlement Agreement attached hereto as Exhibit A. The Distributor Advocate will be responsible for addressing Distributor issues that cannot be resolved on the local level. The Distributor Advocate will represent Distributors' interests and seek to resolve outstanding issues with bakery management and the Distributor. The Distributor Review Panel is an internal dispute resolution process whereby an independent distributor may appeal to an internal review panel for resolution of contract-related disputes. Finally, under the Settlement, all current distributor Plaintiffs will sign an Amendment to their Distributor Agreements, in the form attached as Exhibit 3 to the Settlement Agreement, containing, among other provisions, an arbitration provision with a class action waiver under which the distributor may recover the same types of damages available in Court and the Company agrees to pay for all costs and fees typically associated with arbitration.

### ARGUMENT

The Parties have reached a Settlement Agreement. The settlement fairly and reasonably resolves the Parties' claims and defenses, was negotiated at arms'-length between counsel for all parties, and the Court should enter an order approving the settlement accordingly.

4

I.  **The proposed settlement appropriately resolves the parties' claims and defenses.**

   A.  **Standard for approval of settlement of FLSA collective actions**

In the context of a private lawsuit brought under Section 216(b), a plaintiff may settle and release FLSA claims against a company if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

In reviewing a settlement of a private FLSA claim, the court must scrutinize the proposed settlement for fairness and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *see also Alaniz v. Maxum Petroleum Operating Company, Inc.*, 2016 WL 6462206 (W.D. Tex. Oct. 31, 2016); *Simmons v. Mathis Tire & Auto Serv., Inc.*, No. 13-2875, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015).[2] When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

   B.  **A *bona fide* dispute exists over liability and damages.**

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and

---

[2] *But see is Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247(5th Cir. 2012).

overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 09-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010). The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.*; *Ochs v. Modern Design, Inc.*, No. 14-635, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6, 2014).

A *bona fide* dispute exists in this case. Plaintiffs claim that they were misclassified as independent contractors and further contend that they are entitled to overtime under the FLSA and various damages under state law. Defendants specifically deny these claims and further deny that Plaintiffs are owed any overtime under the FLSA or state law. Defendants contend they have three avenues for success in this case—*i.e.*, Plaintiffs are not entitled to overtime because they are independent contractors, and, assuming Plaintiffs are employees, which is denied, they are otherwise exempt under the MCA and outside sales exemptions. Defendants also have significant defenses to the state law claims asserted herein. All parties faced litigation risks in this case.

On top of the exemption-liability issue, the Parties also had opposing views on other damages components such as: (1) how to calculate damages (*i.e.* time and a half versus half-time damages), (2) whether liquidated damages were available; and (3) whether a two-year or three-year limitations period applied. Defendants claim to have had a good faith basis for believing that the distributors were independent contractors or otherwise exempt from the FLSA, particularly because the independent-contractor classification had survived legal scrutiny before. Moreover, Defendants argue that some of the distributors involved in this settlement only have timely claims if Plaintiffs succeed in showing a *willful* violation of the FLSA, which would render the three-year statute of limitations applicable. If a violation is not willful, the limitations

6

period is only two years. *See id.* Defendants believe Plaintiffs face a significant risk that only the two year limitations period would apply and that some of the Plaintiffs would be entitled to no relief whatsoever.

Although all Parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expense associated with full-blown litigation and discovery, and the uncertainty of dispositive motion practice and trial, the Parties agree that a compromise is appropriate at this stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by Defendants in exchange for release of claims by Plaintiffs and dismissal of this case with prejudice in order to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

### C. The settlement is fair and reasonable.

In addition to resolving a *bona fide* dispute between the Parties, the settlement achieved is fair and reasonable and should be approved for several reasons.

First, the proposed settlement arises out of an action for alleged unpaid overtime and other wages brought by Plaintiffs against their alleged "employer." Each Plaintiff will receive an individualized recovery based on length of time they owned and operated a distributorship, for an average of $4,500.00 a person—a fair recovery considering that: (1) Defendants had three separate arguments for why the distributors should get no recovery at all, and (2) Defendants contend that liquidated damages were not available.

Second, there is no collusion that occurred between counsel. *See Schneider v. Goodyear Tire & Rubber Co.*, No. 13-2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2015) (considering the risk of fraud or collusion between the parties in determining whether to approve an FLSA settlement and concluding that because the parties had engaged in court-supervised negotiations, there was no such risk). Rather, this settlement was reached as a result of arms-length negotiations between the Parties through experienced attorneys.

Third, during the litigation and settlement of this action, Plaintiffs were represented by counsel experienced in handling wage and hour collective actions. Plaintiffs' counsel has the experience to assess the risks of continued litigation and benefits of settlement and have done so in this action. Plaintiffs' counsel has a long-standing multi-jurisdictional practice representing employees with claims against employers similar to the claims asserted in this case. Defense counsel is likewise experienced in defending similar claims. Counsel for all Parties have advised their respective clients regarding the settlement, and they have recommended judicial approval: the Court should afford those recommendations weight. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness).

Fourth, the range of possible recovery in this case was uncertain. As noted above, the Parties had very divergent positions on damages components such as whether liquidated (double) damages were appropriate, whether Defendants acted willfully, and whether the fluctuating workweek overtime calculation method applied, and whether Defendants were entitled to any offset, in addition to the exemption liability issue.

Fifth, the proceedings have advanced to a stage sufficient to permit the Parties and their experienced counsel to collect, obtain, and review evidence, evaluate their claims and defenses,

understand the scope of potential damages, and engage in negotiations with the mutual understanding that continuing toward additional formal discovery and completing dispositive motion practice (including decertification) would be a difficult, costly, and uncertain undertaking.

Sixth, the complexity, expense, and likely duration of the litigation should a settlement not have been reached weighs heavily in favor of finding that this settlement is fair and reasonable. Without question, if the case had not settled, the Parties would have spent significant time and resources completing written and deposition discovery, including depositions of the Named Plaintiffs, various opt-in plaintiffs, and Defendants' upper management witnesses. Similarly, if this case had not settled, the Parties would have spent significant time briefing decertification and drafting a dispositive motions: both Parties would have sought summary judgment on Defendants' exemption defenses and potentially some of the damages issues (*i.e.* liquidated damages, willfulness, and damages calculations). After the resolution of these issues, the Parties may have faced the prospect of an expensive, lengthy jury trial as well as likely appeals and post-trial motions. Rather than take this path, the Parties directed their efforts toward an early, informed, efficient resolution of Plaintiffs' claims. While a number of issues remain unresolved in this litigation, preparation for the various negotiation sessions enabled counsel to assess the respective strengths and weaknesses of their case and reach the conclusion that settlement is in the Parties' best interests. The settlement eliminates the inherent risks both sides would bear if this case were to continue. Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve it.

## II. Plaintiffs' counsel's requested attorneys' fees and costs are reasonable and should be fully awarded.

As set forth in the Affidavit of Alfonso Kennard attached as Exhibit B, the proposed award of attorneys' fees and expenses is fair, reasonable, and should be approved. In the Fifth Circuit, the lodestar method is used to analyze fee applications. Sai*zan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). Under the lodestar method, "the number of hours reasonably spent on the case [is multiplied] by an appropriate hourly rate in the community for such work." *Id.* The reasonable hourly rate is based on "the prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community…" *Villegas v. Regions Bank*, No. CIV.A. H-11-904, 2013 WL 76719, at *3 (S.D. Tex. Jan. 4, 2013) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)). Applicants for fees bear the burden of demonstrating the hours they have billed are reasonable, and thus are charged with "properly documenting the hours spent and [submitting] competent evidence of those hours." *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 387 (S.D. Tex. 2016) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *see also Prater v. Commerce Equities Mgmt. Co.*, No. CIV.A. H-07-2349, 2008 WL 5140045, at *3 (S.D. Tex. Dec. 8, 2008).

After applying the lodestar analysis, courts evaluate the "factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)" to determine whether an upward or downward adjustment is appropriate. *Roussel v. Brinker Int'l, Inc.*, No. CIV.A.H-05-3733, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010) (Ellison, J.), *aff'd sub nom. Roussel v. Brinker Int'l, Inc.*, 441 F. App'x 222 (5th Cir. 2011). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations

10

imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Roussel*, 2010 WL 1881898, at *3 n.1 (citing Johnson, 488 F.2d at 717-19). The core issue that both the lodestar method and the *Johnson* factors are designed to address is "the reasonableness of [the applicant's] fee request at the time the work was performed." *Roussel*, 2010 WL 1881898, at *6.

In this case, the proposed attorney fee and cost award of $152,000.00 is appropriate under the loadstar method and when the *Johnson* factors are applied. As evidenced by the declaration of counsel, Plaintiffs' attorneys' fees and costs exceed the $152,000.00 that has been requested.[3] The declarations set forth the hourly rates claimed by counsel for Plaintiffs, the hours billed, the expenses incurred, all of which Plaintiffs contend were reasonable and necessary for a case of this nature.

This case has been actively litigated, including through extensive written discovery and document production, numerous contested motions, and attendance at hearings before the Court. Accordingly, Plaintiffs contend—and Defendants have not challenged that the attorneys' fees award reached as part of this settlement is fair and reasonable.

## **CONCLUSION**

This FLSA collective action settlement is a product of an arms-length negotiation between counsel, which resolves a *bona fide* dispute over overtime and minimum wages. The

---

[3] While the attorneys' fees exceed the recovery for the Plaintiffs and Opt-in Plaintiffs here, this is not dispositive in light of the significant variables impacting whether Plaintiffs were entitled to any damages at all discussed more fully above. Further, the Fifth Circuit has recognized that "while a low damages award is one factor which a district court may consider in setting the amount of attorneys' fees, this factor alone should not lead the district court to reduce a fee award." *Hollowell v. Orleans Reg'l Hosp., LLC*, 217 F.3d 379, 392 (5th Cir. 2000). *See also Singer v. City of Waco, Tex.*, 324 F.3d 813, 829-830 (5th Cir. 2003) (refusing to lower attorneys' fees award in light of low recovery because of the "strong presumption: that the lodestar award is reasonable).

11

settlement is fair and reasonable and provides Plaintiffs with significant monetary relief. Accordingly, the Parties jointly and respectfully request that this Court approve the Parties' settlement agreement and the distribution of the settlement amount to Plaintiffs in full as described above. Further, Plaintiffs' Counsel requests that this Court award as reasonable the attorneys' fees and litigation costs in the amount requested. Finally the Parties jointly request that this action be dismissed with prejudice.

                                            Respectfully submitted,

                                            */s/ Alfonso Kennard, Jr.*
                                            Alfonso Kennard, Jr.
                                            Kennard Richard, P.C.
                                            2603 Augusta Drive, 14th Floor
                                            Houston, Texas 77057
                                            **ATTORNEYS FOR PLAINTIFFS**

                                            */s/ Michael D. Mitchell*
                                            Michael D. Mitchell
                                            State Bar No. 00784615
                                            michael.mitchell@ogletree.com
                                            Stephen E. Hart
                                            State Bar No. 00793911
                                            Stephen.hart@ogletree.com
                                            Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
                                            500 Dallas Street, Suite 3000
                                            Houston, Texas  77002-4709
                                            (713) 655-5756 (Phone)
                                            (713) 655-0020 (Fax)
                                            **ATTORNEYS FOR DEFENDANTS**
                                            **FLOWERS FOODS, INC. and FLOWERS**
                                            **BAKING CO. OF SAN ANTONIO, LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of August, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, thereby providing a copy of same to Plaintiff's counsel.

Alfonso Kennard, Jr.
Kennard Richard, P.C.
2603 Augusta Drive, 14th Floor
Houston, Texas 77057
**ATTORNEY FOR PLAINTIFFS**

                                                                                              */s/ Michael D. Mitchell*
                                                                                              Michael D. Mitchell